IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : 3:21-CR-247 |
| | : (JUDGE MARIANI) |
| **ROBERT WAZNY,** | : |
| | : |
| Defendant. | : |

# MEMORANDUM OPINION

## I. INTRODUCTION AND PROCEDURAL HISTORY

On August 31, 2021, a federal grand jury indicted Defendant Robert Wazny with Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 1); Brandishing a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (Count 3); and Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (Count 4). (Doc. 1).

On February 24, 2022, the Court granted Defendant's unopposed Motion to Determine Competency of Defendant Pursuant to 18 U.S.C. § 4241 and committed Defendant Wazny to the custody of the Attorney General for placement in a suitable facility and for the purpose of obtaining a psychiatric or psychological examination to determine Wazny's mental competency. (Doc. 33).

Defendant was referred to the Lexington Federal Medical Center and the Court and the parties received a Forensic Psychological Report by Dr. Haley Wentowski, dated May 2, 2022, recommending that the Court find Defendant Wazny "incompetent to proceed" and recommending that Wazny be committed for treatment under the provisions of 18 U.S.C. § 4241(d) "to receive inpatient competency restoration services". (*See* Doc. 39).

On May 31, 2022, the Court held a competency hearing pursuant to 18 U.S.C. § 4241 and pursuant to the requirements of 18 U.S.C. § 4247(d). Upon consideration of the Forensic Psychological Report of Dr. Wentowski (Doc. 39), counsel's Stipulation on the Defendant's Mental Competency (Doc. 45), and the comments of counsel at the hearing, and Mr. Wazny having been provided the opportunity to speak at the hearing but declining to do so, the Court found by a preponderance of the evidence that Wazny is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The Court therefore ordered the Attorney General to hospitalize Wazny for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future Defendant Wazny will attain the capacity to permit the proceedings to go forward. (Doc. 49).

On October 18, 2022, Defendant filed a Motion to Compel Government to Transfer Defendant for Restoration of Competency (Doc. 54). Defendant's motion reports that

Wazny remains incarcerated in the Lackawanna County Prison and requests that "this Court . . . use its supervisory powers to order the government to speed up Mr. Wazny's transfer to a suitable facility, BOP or otherwise, at which to attempt restoration of Mr. Wazny's competency." (*Id.* at ¶¶ 3, 6). The Government filed a brief in opposition to Defendant's motion (Doc. 58) and the motion is now ripe for resolution. For the reasons set forth herein, the Court will grant Defendant's motion.

## II. ANALYSIS

Pursuant to 18 U.S.C. § 4241(d),

If, after the hearing [conducted pursuant to § 4247(d)], the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

**(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

**(2)** for an additional reasonable period of time until--
**(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
**(B)** the pending charges against him are disposed of according to law;

whichever is earlier.

18 U.S.C. § 4241(d).

Here, as set forth *supra*, this Court held the statutorily required hearing and committed Wazny to the custody of the Attorney General on May 31, 2022 (Doc. 49). Defendant Wazny has since been designated to undergo treatment at FMC Butner (Decl. of Dr. Boutwell, ¶ 16).[1] According to Dr. Dia Boutwell, the Chief of Psychological Evaluations for the Federal Bureau of Prisons ("BOP"), the "likely time frame for admission of Mr. Wazny into FMC Butner is approximately February 2023." (*Id.*). As a result, it currently appears that the time between this Court's order committing Defendant to the custody of the Attorney General and Wazny's admission to a suitable facility will be approximately eight-to-nine months.

Defendant Wazny's brief in support of his Motion to Compel Government to Transfer Defendant for Restoration of Competency argues that Wazny "cannot be held in custody indefinitely pending restoration of competency" (Doc. 55, at 2). Defendant concedes that the Insanity Defense Reform Act does not set a time limit on the period of pre-hospitalization custody after the Court directs the Attorney General to find a suitable facility but argues that the Constitution can nonetheless not "tolerate an indefinite term of commitment under Section 4241." (Doc. 55, at 3). In support of this argument, Defendant

---

[1] Dr. Dia Boutwell is the Chief of Psychological Evaluations for the Federal Bureau of Prisons and "oversee[s] and manage[s] the movement of court-ordered or referred defendants for mental health study orders and evaluations to and from appropriate Bureau institutions." (Decl. of Dr. Boutwell, ¶¶ 1,2). Her declaration was filed by the Government as an attachment to its brief in opposition to Defendant's motion (*see* Doc. 58-1).

Wazny relies in the recent Ninth Circuit Court of Appeals decision in *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022). (*Id.* at 3-4).

In *United States v. Donnelly*, the District Court, after ordering a psychological evaluation and conducting a hearing to evaluate the defendant's competency to stand trial, found the defendant to be "'suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is presently unable to assist properly in his defense of this criminal matter'" and, as required under the Insanity Defense Reform Act, committed the defendant to the custody of the Attorney General. 41 F.4th at 1103. Four months after the district court issued its order, the defendant remained detained awaiting hospitalization and was informed that he would likely have to wait an additional four months before a bed would be available. *Id.* at 1104. The defendant filed a motion to dismiss the indictment, arguing that the four-month-plus delay in placing him in a suitable hospital facility violated his rights under 18 U.S.C. § 4241(d) and the Fifth Amendment's Due Process Clause. The District Court denied the defendant's motion, rejecting Defendant's statutory argument that the four-month time limit imposed by § 4241(d)(1) begins to run at the time the Court orders his commitment to the Attorney General's custody and rejecting the due process argument on the ground that Defendant had not shown the kind of "grossly shocking and outrageous" government misconduct necessary to warrant dismissal of the indictment. *Id.* at 1104.

On appeal, the Ninth Circuit agreed with the District Court's denial of the motion to dismiss, but nonetheless vacated the District Court's order as a result of the Ninth Circuit's

differing reasoning. *Donnelly*, 41 F.4th at 1104. The Ninth Circuit first emphasized that "the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized." *Id.* at 1105. However, the Circuit recognized that the statutory language does not indicate whether it permits a delay between commitment and hospitalization. *Id.* Regardless, the Ninth Circuit found that "[w]e need not decide whether the statute allows some amount of pre-hospitalization confinement because the delay here falls outside any constitutional reading of the statute." *Id.* at 1105. Citing to the Supreme Court's opinion in *Jackson v. Indiana*, 406 U.S. 715 (1972),[2] the Ninth Circuit reasoned:

> The Constitution does not permit any portion of a defendant's commitment under 18 U.S.C. § 4241(d) to last indefinitely. Although Congress did not provide a specific time limit for a pre-hospitalization commitment period, *Jackson* requires the duration of any such commitment to "bear some reasonable relation" to its purpose. *Id.* [at 738]. To determine the permitted length of the pre-hospitalization commitment period, then, we must ask what purpose that period serves.
>
> We find our answer in the text of the statute. Upon a defendant's commitment, the Attorney General must identify a "suitable facility" in which to hospitalize a defendant based on the particular rehabilitative needs of that individual. *See* 18 U.S.C. §§ 4241(d), 4247. As we recently recognized, § 4247 endows the

---

[2] In *Jackson*, the Supreme Court examined the constitutionality of an Indiana statutory scheme that allowed for the commitment of criminal defendants adjudged to be incompetent to stand trial. The Court held that:

> ... a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

406 U.S. at 738.

> Attorney General with considerable discretion in making that determination. *See United States v. Quintero*, 995 F.3d 1044, 1050-51 (9th Cir. 2021). Assuming that decision requires some amount of time, the two-step structure of § 4241(d) – commitment to the custody of the Attorney General, followed by a period of hospitalization – might require a pre-hospitalization commitment period to allow the Attorney General time to identify a suitable facility and arrange for the defendant's transportation to that facility. But to abide by *Jackson*, the duration of the pre-hospitalization commitment period must be limited to the time reasonably required to accomplish those tasks.

*Donnelly*, 41 F.4th at 1105-1106. With these principles in mind, the Ninth Circuit concluded that "[w]e do not think *Jackson*'s 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself" and therefore the Circuit Court had "little difficulty concluding that whatever the outer limit of § 4241(d), the length of [Defendant's] confinement exceeds it." *Id.* at 1106.

Although the Ninth Circuit agreed with the District Court that dismissal of the indictment was not the proper remedy, it remanded the case to the District Court to order the Attorney General to hospitalize the defendant in a suitable facility within seven days. The Circuit Court reasoned:

> Although Donnelly has not sought injunctive relief, the district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury. . . Ultimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay. . . Doing so will allow Donnelly to receive the treatment necessary to make a restoration determination – the critical step down the path toward either restoration and trial or dismissal of the

7

indictment and initiation of civil commitment proceedings. *See* 18 U.S.C. § 4241(d), (e).

*Donnelly*, 41 F.4th at 1107 (internal citations omitted).

The Government in this case argues that the *Donnelly* Court's "focus on the 'four months' language in § 4241(d) is too narrow and ignores the overall scheme of the statute that the process take place in a *reasonable period of time*." (Doc. 58, at 7) (emphasis by Government). The Government asserts that:

> [w]hile the initial medical evaluation to determine whether it is likely that the defendant might be restored is limited to four months, it is clear by the language of § 4121(d) [*sic*] that the whole process is contemplated to last well beyond the initial intake and evaluation. Even if it is determined that the defendant is likely not going to have his competency restored, he may still be housed and not released if the court determines that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. See 18 U.S.C. § 4246. If it is shown that Wazny's competency might be restored, then he would stay in custody and receive treatment for an *additional reasonable period of time* in order to attempt restoration. 18 U.S.C. § 4121(d)(2)(A) [*sic*] (emphasis added).

(Doc. 58, at 7).³ The Government thus urges this Court to "take a more pragmatic approach – an approach suggested by the statutory scheme of § 4121(d) [*sic*] that the government act

---

³ Even accepting as correct the Government's assertion that "the whole process is contemplated to last well beyond the initial intake and evaluation" (Doc. 58, at 7), this argument misses the mark. Rather, the Court agrees with the Ninth Circuit's reasoning as to why a lengthy period of pre-hospitalization commitment is not harmless and requires remedy from the Court.

> That argument [that the commitment is harmless and thus requires no remedy] assumes that a defendant who is already detained under the Bail Reform Act suffers no harm from time spent awaiting hospitalization because he would have remained in detention anyway. But the harm here arises not from the fact of detention, but rather by its extended length. However long it takes for Donnelly to be hospitalized, treated, and (if possible) restored to competency, all of that time will be in addition to the time he can be detained while awaiting trial. *See United States v. Romero*, 833 F.3d 1151, 1154 (9th Cir. 2016) (holding that the

within a reasonable time to transfer the defendant." (*Id.* at 8). The Government points to Dr. Boutwell's Declaration setting forth the BOP's "process", as well as the assertions of the Government and Dr. Boutwell that Wazny's psychological health is being addressed at the Lackawanna County Prison, as factors that this Court should consider in determining what constitutes a "reasonable period of time". (Doc. 58, at 8).

Dr. Boutwell's Declaration sets forth the BOP's procedure for designating an individual to a suitable facility and the purported reasons for the delay in placing individuals, including Defendant Wazny, at the designated facility. Pursuant to Dr. Boutwell's Declaration, "there are three medical institutions for males that have been deemed a 'suitable facility' for the purposes of competency restoration pursuant to 18 U.S.C. §4241(d)": FMC Butner, FMC Devens, and the United States Medical Center for Federal Prisoners in Springfield, Missouri. (Decl. of Dr. Boutwell, ¶ 7). Dr. Boutwell further explains that:

> [t]here are significant wait times for beds into these three Bureau medical facilities due to limited staffing, resources, and bed availability. Therefore, [Justice Prisoner and Alien Transportation System] Aeromedical works directly with the Bureau mental health staff, who are responsible for determining bed space for the inmates. Each Bureau facility has a specific number of intakes per month, which is determined (and limited) by each facility's resources. Bed space is allotted based on date of the court order. This system is the most fair and equitable way to complete movement for all prisoners out of the 94 USMS districts waiting on a bed in one of only three BOP facilities that can complete competency restoration under 18 USC 4241(d) for male inmates.

---

Speedy Trial Act permits exclusion of all time resulting from a district court's finding that a defendant is incompetent to stand trial). When the excluded time is unlawfully extended by an unreasonably long pre-hospitalization commitment period, that excess detention constitutes a real injury.
*Donnelly,* 41 F.4th at 1106 n. 2.

9

(*Id.* at ¶ 9). The only reason that the BOP would alter a defendant's place on the waiting list would be if the U.S. Marshal Service contacted the Bureau "due to the defendant experiencing severe medical or psychological decompensation, thereby increasing the urgency for treatment due to a medical reason. At that point, documentation would be reviewed, and [Dr. Boutwell] would discuss the case with USMS and Bureau personnel, in order to determine the most appropriate decision for that inmate." (*Id.* at ¶ 13). However, the Bureau does not deem the fact that an inmate is being prescribed psychotropic medications and receiving mental health care as sufficient grounds "to be expedited (i.e. bumped up)" in the waiting list queue. (*Id.* at ¶ 14). "However, if an inmate is engaging in behavior that causes the facility concern, or that they believe they are unable to manage, they communicate with the USMS, provide documentation, and [Dr. Boutwell] would then review that information." (*Id.*).

In looking to the statutory text of § 4241(d), this Court concludes that § 4241(d) must be construed to include a presumptive period after which detention becomes unreasonable, absent some sufficient justification by the Government.[4] Consistent with the Ninth Circuit's

---

[4] While clearly factually distinguishable, the Court finds some guidance in the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). There, the Supreme Court looked to whether 8 U.S.C. § 1231(a) "authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682. The Court found that "[b]ased on our conclusion that indefinite detention of aliens [who were admitted to the United States but subsequently ordered removed] would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* (italics in original). The Supreme Court noted that "ordinary principles of judicial review" counsel judges to give Executive Branch agencies, as experts, "decisionmaking leeway in matters that invoke their expertise" and explained that "recognizing this necessary Executive leeway will often call for difficult judgments." *Id.* at 700. Thus, "[i]n order to limit the occasions when courts will need to make"

reasoning, this Court finds that, while the time limit within which a defendant must be admitted to a suitable facility is not fixed, eight months facially offends basic due process principles and is presumptively unreasonable. Unlike the Ninth Circuit however, for the reasons set forth *infra*, this Court is nonetheless not persuaded that defendant Wazny's current period of pre-hospitalization custody of six-months clearly exceeds what can be deemed a reasonable period of time.

Dr. Boutwell's Declaration sets forth several excuses for the delay in placing Wazny at FMC Butner, including "significant wait times" due to "limited staffing, resources, and bed availability" (Decl. of Dr. Boutwell, ¶ 9) and an increase in 18 U.S.C. § 4241(d) orders almost every year since 2016 (*id*. at ¶ 12). However, these explanations amount to only

---

these judgments, the Court deemed "it practically necessary to recognize some presumptively reasonable period of detention" and reiterated that it had "adopted similar presumptions in other contexts to guide lower court determinations." *Id*. at 700-701. Looking to the legislative history of the removal statute, the Supreme Court found "reason to believe. . . that Congress previously doubted the constitutionality of detention for more than six months" and thus recognized this 6-month period as presumptively reasonable, stating that after this time period had lapsed, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701.

       The Supreme Court's decision in *Zadvydas* makes clear that while this Court should defer to the decision-making leeway of the Attorney General, a member of the Executive Branch, as provided for in § 4241, the Court may not abdicate its duty to ensure that a defendant's constitutional and statutory rights are not violated. The *Zadvydas* decision, just as in *Jackson*, supports the conclusion that, while no time period for pre-hospitalization detention is set forth in § 4241(d), an indefinite term of commitment under § 4241 violates a defendant's constitutional rights. While this Court recognizes that Wazny's pre-hospitalization detention might not be characterized as "indefinite" where the BOP has stated that the "likely time frame for admission of Mr. Wazny into FMC Butner is approximately February 2023" (Decl. of Dr. Boutwell, ¶ 16), *Zadvydas* nonetheless suggests that in the absence of an explicit "reasonable time" limitation set forth in the statute, constitutional concerns should lead this Court to construe § 4241(d) to contain an implicit "reasonable time" limitation. Regrettably, here, unlike in *Zadvydas*, no party has set forth any legislative history or legal argument to guide the Court in determining what may be considered presumptively reasonable.

11

administrative and bureaucratic difficulties that the Bureau of Prisons is currently experiencing, and Dr. Boutwell's Declaration provides no substantive reason for the expected eight-to-nine-month delay in placing Wazny at FMC Butner.[5] This Court is thus, in essence, being asked to consider the extent to which these bureaucratic and resource issues within the BOP should be taken into consideration when determining what period of time § 4241(d) allows for pre-hospitalization custody without violating a defendant's rights. While this Court agrees with the Government that § 4241(d) of the Insanity Defense Reform Act contemplates a "reasonable period of time" for the Attorney General and BOP to designate and transport a defendant to a suitable facility, the Government provides no guidance for what constitutes such a period of time, and this Court finds the factors suggested by the Government that should be considered, to wit, the bureaucratic, staffing, and space issues within the BOP, to be of only limited significance when balanced against the due process and statutory rights of a criminal defendant. Although evidence that a defendant's mental condition is being treated at the facility in which he is housed pre-hospitalization and that it is not worsening is a more persuasive factor in determining the contours of a "reasonable period of time", this, by itself, is insufficient to justify a lengthy pre-hospitalization. Rather, the Court agrees with the Ninth Circuit's admonition that "[t]he

---

[5] Additionally, Dr. Boutwell's statement in her Declaration that "[i]f an inmate on the waiting list is bumped up in the waiting list queue, that means that other inmates, who have been waiting just as long or longer, are bumped back one spot in the queue" (Decl. of Dr. Boutwell, ¶ 13), is logically sound but of no importance to this Court's analysis. The statement merely underscores the BOP's limited resources and is irrelevant in determining whether the legal rights of an individual criminal defendant, such as Wazny, are being infringed upon or violated.

Constitution does not permit any portion of a defendant's commitment under 18 U.S.C. § 4241(d) to last indefinitely" and, looking to the Supreme Court's decision in *Jackson*, that "the duration of any such commitment [must] 'bear some reasonable relation' to its purpose." *Donnelly*, 41 F.4th at 1106 (quoting *Jackson*, 406 U.S. at 738).

The Court recognizes that Defendant Wazny's pre-hospitalization does not appear to be "indefinite". The BOP has informed the parties and this Court that Wazny will be admitted to FMC Butner in approximately February of 2023. However, at issue is whether the resulting eight-to-nine month waiting period bears a reasonable relation to its purpose – i.e. the time necessary for the Attorney General and the BOP to identify the suitable facility and arrange for Wazny's transportation to that facility. *See Donnelly*, 41 F.4th at 1106.

Assuming that the length of a defendant's pre-hospitalization custody is not subject to a fixed time-limit, there is no doubt that a determination of what constitutes the reasonable period of time accorded by § 4241(d) pre-hospitalization is subjective. As suggested by the Government, a determination of a "reasonable period of time" is aided by looking to the proffered factors for any delay in transporting and admitting a defendant for treatment and evaluation following a finding by the Court that the defendant is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense", 18 U.S.C. § 4241(d).

Dr. Boutwell's assertions with respect to the reasons that a defendant such as Wazny must wait at least eight months prior to being admitted to a suitable facility amount to bureaucratic failures by the Attorney General and within the BOP to designate a sufficient number of facilities, employ the necessary staff, and provide the adequate resources, to serve the increasing demands of the judicial system and requirements of § 4241(d). The Government argues that the explanations set forth by Dr. Boutwell are sufficient to support a finding that Wazny's projected eight to nine-month pre-hospitalization is a "reasonable" period of time. However, the Government apparently leaves to this Court the temporal tipping point at which the Bureau's limited facilities and resources, including insufficient beds and staff, is no longer reasonable. Although the Court is sympathetic to the administrative and financial issues confronted by the BOP, and such difficulties may support a brief extension of what may be considered a "reasonable" time period, the difficulties are insufficient to justify a prolonged pre-hospitalization detention by a defendant and risk the infringement of a pre-trial criminal defendant's due process rights.[6]

Nonetheless, the Court notes the current record evidence with respect to Wazny's current mental state. Wazny's counsel submitted a Declaration in support of the pending

---

[6] This Court's determination that the Bureau's limited resources carries little weight in determining whether the period of pre-hospitalization is reasonable is implicitly supported by *Donnelly*. There, the Ninth Circuit recognized that the Bureau of Prisons, to whom the Attorney General has delegated responsibility for complying with § 4241(d)(1), is currently facing a "significant backlog in placing defendants in suitable facilities for treatment, as § 4241(d) requires", *Donnelly*, 41 F.4th at 1104. However, the Ninth Circuit did not address this observation in its analysis and it appears to have been of no importance in the Court's reasoning and decision.

motion averring that the federal defender's investigator, who met with Wazny in October of 2022, "estimated that about 50% or more of Mr. Wazny's speech was directed at [auditory hallucinations of a paranoid nature]." (Decl. of Att'y Reish, ¶ 6).[7] Counsel's Declaration does not indicate that Wazny's condition has changed since this Court's May 31, 2022 Order committing Defendant to the custody of the Attorney General. In turn, the Government submitted the Declaration of Dr. Boutwell, who states that she has received "no information from the USMS where the custodial facility has voiced concerns regarding severe medical or psychological decompensation for Mr. Wazny" and that based upon her review of the information available in the BOP's system regarding Mr. Wazny, "he does not currently appear to be experiencing severe medical or psychological decompensation." (Decl. of Dr. Boutwell, ¶ 17). Thus, the limited record evidence before this Court currently indicates that Wazny's psychological health has not deteriorated, and that, if it did, this information would be reviewed by the BOP, factors which weigh in favor of the Government and aid in reasonably justifying Wazny's current period of pre-hospitalization detention.

---

[7] Although at the time of the filing of Defendant's motion and supporting brief his counsel was "unable to coordinate or receive substantive updates about [Wazny's] care" due to Wazny's refusal to provide medical authorization for the release of his medical records to counsel (Decl. of Att'y Reish, ¶ 7), this Court subsequently granted Defendant's counsel's motion for a subpoena directing Wellpath Medical, the medical provider for the Lackawanna County Prison, to provide "[a]ny and all medical, psychological/ psychiatric records . . . with regard to inmate Robert Wazny" and ordered Wellpath Medical to produce the records on or before October 28, 2022 (see Docs. 56, 57). Defendant's counsel has therefore had ample opportunity to supplement the record as to Wazny's mental health condition should he have deemed necessary.

As a result, while this Court declines to set forth a bright-line time period of pre-hospitalization custody after which the detention becomes presumptively unreasonable, the Court agrees with the Ninth Circuit that eight-months exceeds the temporal limits contemplated within § 4241(d), see Donnelly, 41 F.4th at 1106.  Where Wazny's pre-hospitalization confinement is currently projected to last for eight-to-nine-months, the Government has not set forth a sufficient basis for this Court to find that this prolonged period of detention amounts to a "reasonable period of time".

A district court "possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury." Donnelly, 41 F.4th at 1107; see also, United States v. Hasting, 461 U.S. 499, 505 (1983) ("[G]uided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights . . . ; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury. . . ; and finally, as a remedy designed to deter illegal conduct. . .") (internal citations and quotation marks omitted).  For the reasons set forth herein, the Court finds that "both [Wazny's] liberty interest and Congress's directive to restore incompetent defendants where possible", Donnelly, 41 F.4th at 1107, will be best served by requiring the Government to hospitalize Wazny in a suitable facility no later than 30 days from the date of this Court's

accompanying Order granting Defendant's Motion to Compel Government to Transfer Defendant for Restoration of Competency (Doc. 54).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Wazny's Motion to Compel Government to Transfer Defendant for Restoration of Competency (Doc. 54).

Robert D. Mariani
United States District Judge